# UNITED STATES OF AMERICA
## UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF MICHIGAN
#### SOUTHERN DIVISION
_____

JERRELL KEMPLE MOORE,  )
# 284240,  )
　　　　　　　　　　　　　　　　)
　　　　　　　Petitioner,  )　　Case No. 1:14-cv-558
　　　　　　　　　　　　　　　　)
v.  )　　Honorable Paul L. Maloney
　　　　　　　　　　　　　　　　)
CARMEN PALMER,  )　　**REPORT AND RECOMMENDATION**
　　　　　　　　　　　　　　　　)
　　　　　　　Respondent.  )
_____)

　　　　This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner's convictions stem from his shooting and killing of Jerome Griffin. On May 11, 2010, a Wayne County Circuit Court jury convicted petitioner of felony murder, Mich. Comp. Laws § 750.316(1)(b), possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and three counts of assault with intent to rob while armed, Mich. Comp. Laws § 750.89. On May 27, 2010, the trial court sentenced petitioner to life imprisonment for his felony murder conviction, five years' imprisonment for his felony firearm conviction, six to fifteen years' imprisonment for his felon in possession of a firearm conviction, and three terms of thirty to fifty years' imprisonment for his assault with intent to rob while armed convictions.

After unsuccessful attempts to overturn his convictions in Michigan's courts, petitioner filed his federal habeas corpus petition. He asks this Court to overturn his convictions on the following grounds:

I. The admission of petitioner's recorded telephone conversation from jail into evidence violated petitioner's due process rights under the Confrontation Clause.

II. The trial court's failure to give, *sua sponte*, an instruction on petitioner's alibi defense deprived him of a fair trial.

III. A denial of due process because the jury verdict form did not provide the jury with an opportunity to return a general verdict of not guilty.

IV. A due process violation stemming from a defective instruction on felony murder larceny.

V. A violation of petitioner's rights under the Fourteenth Amendment's Due Process Clause in that the evidence at trial was insufficient to support the jury's verdict finding petitioner guilty of felony murder.

VI. Prosecutorial mischarging

VII. Judicial abuse of discretion.

(Petition at 3-7, ECF No. 1, PageID.3-7).

On July 17, 2014, the Court completed its review of the petition under Rule 4 of the Rules Governing § 2254 cases and entered an opinion and order. (ECF Nos. 5, 6). The Court determined that petitioner failed to exhaust Grounds VI and VII in Michigan's courts. (ECF No. 5 at PageID.19-20). The Court advised petitioner that, if he wished to pursue his unexhausted claims in state court, he was required to show cause on or before August 14, 2014, why he was entitled to a stay of proceedings. Specifically, he was required to show good cause for his failure to exhaust Grounds VI

and VII before filing his habeas petition, that his unexhausted claims were not plainly meritless, and that he had not engaged in intentionally dilatory litigation tactics. Further, petitioner was advised that, if he failed to meet the aforementioned requirements for a stay or failed to timely comply with the Court's order, the Court would review only his exhausted claims. In the alternative, petitioner could file an amended pleading setting forth only his exhausted claims. (ECF No. 5 at 6-7, PageID. 22-23; ECF No. 6, PageID.24). Petitioner ignored the Court's order. Unexhausted Grounds VI and VII should be deemed abandoned because petitioner did not make any timely attempt to meet the requirements for a stay and he failed to comply with the Court's order.

On February 25, 2015, respondent filed her answer to the petition. (ECF No. 10). Respondent argues that the petition should be denied for lack of merit. (*Id.* at 30-60, PageID.59-89). Respondent argues that petitioner has abandoned Grounds VI and VII. (*Id.* at 58, PageID.87). Further, she argues that Grounds II, III, and IV are barred by procedural defaults and petitioner has not established grounds to overcome those defaults. (*Id.* at 9, 31-48, 59, PageID.38, 60-77, 89).

This matter was referred to me for all purposes, including the issuance of a report and recommendation, under 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Section 2254 Cases in the District Courts. (ECF No. 7). After review of the

state-court record, I conclude petitioner has not established grounds for federal habeas corpus relief.[1]  I recommend that the petition be denied.

## Standard of Review

The Court's review of this petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).  AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted).  "AEDPA requires heightened respect for state court factual and legal determinations."  *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006).  "State-court factual findings [] are presumed correct; the petitioner has the burden of rebutting the presumption by clear and convincing evidence."  *Davis v. Ayala*, 135 S. Ct. 2187, 2199-2200 (2015) (citations and internal quotations omitted).

If a state court adjudicated the claim, deferential AEDPA standards must be applied.  28 U.S.C. § 2254(d); *see Premo v. Moore*, 562 U.S. 115, 121 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (("[A]ny claim that was adjudicated on the merits in State court

---

[1]Both the Supreme Court and the Sixth Circuit have indicated that this Court has discretion to ignore a procedural default and proceed directly to the merits of an apparently defaulted claim, when to do so would be more expeditious than an analysis of the complicated procedural default question. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *Bales v. Bell*, 788 F.3d 568, 573 (6th Cir. 2015); *Scott v. Houk*, 760 F.3d 497, 506 (6th Cir. 2014).  In the present case, the grounds raised by petitioner are meritless, so a detailed analysis of the complicated procedural default issues is unnecessary.

proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)). AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012) (*per curiam*).

The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "Section 2254(d) reflects the that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Id.* at 102-03 (citation and internal quotation omitted); *see Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see White v. Wheeler*, 136 S. Ct. 456, 460 (2015); *Davis v. Ayala*, 135 S. Ct. at 2198; *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

The only definitive source of clearly established federal law for purposes of § 2254(d)(1) is the holdings—not dicta—of Supreme Court decisions. *White v. Woodall*, 134 S. Ct. at 1702; *see Woods v. Donald*, 135 S. Ct. at 1377 ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court."). "[W]here the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Id.* (quotations and internal citations omitted).

An unreasonable application of the Supreme Court's holding must be "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. at 103). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015) (quoting *Parker v. Matthews*, 132 S. Ct. at 2155); *see Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (*per curiam*) ("As we have repeatedly emphasized, [] circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'").

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Section 2254 (d)(2) requires that this Court accord the state trial court substantial deference. If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).

## Proposed Findings of Fact

### A.    District Court Proceedings

On February 5, 2008, petitioner received a preliminary examination in 36th District Court for the City of Detroit, Criminal Division. (Preliminary Examination, ECF No. 11-2). Charles Williams testified against petitioner. (*Id.* at 8-27, PageID.122-41). Judge Kenneth King bound over petitioner for trial in Wayne County Circuit Court on all charges. (*Id.* at 36-38, PageID.150-52).

### B.    Circuit Court Proceedings

Petitioner's trial began on May 3, 2010, and it concluded on May 11, 2010, with the jury's verdict finding him guilty of felony murder, possession of a firearm during the commission of a felony, felon in possession of a firearm, and three counts of assault with intent to rob while armed. (Trial Transcripts (TT I-TT VII), ECF No. 11-18 through 11-24).

On the night of November 13, 2007, Jerome Griffin (a/k/a "Pooh"), Charles Williams (a/k/a "Duker"), Kuntie Robinson (a/k/a "Kool"), and Leo Michael Ross were

in Detroit at a house located on Prairie Street. (TT III, 163-68, ECF No. 11-20, PageID.709-14; TT IV, 18-31, 104-08, 218-22, ECF No. 11-21, PageID.771-84, 857-61, 971-75). Charles Williams had marijuana and he was selling it out of that house. (TT IV, 65, 222, ECF No. 11-21, PageID.818, 975). Petitioner entered through the front door with a handgun in each hand and gave the four occupants a command to the following effect: "You know what time it is. Get down." (TT IV, 25-30, 110-11, 117-18, 223-34, ECF No. 11-21, PageID.778-83, 863-64, 870-71, 976-87). Jerome Griffin struggled with petitioner, was shot more than once, and died as a result of multiple gunshot wounds. (TT III, 107-39, ECF No. 11-20, PageID.653-85; TT IV, 31-32 117-23, 223-34, ECF No. 11-21, PageID.784-85, 870-76, 976-87, TT V, 8-14, ECF No. 11-22, PageID.998-1004).

On December 31, 2007, petitioner encountered police, made an unsuccessful attempt to flee, was arrested for a separate crime during which time he was in possession of a .38 handgun, later identified as the weapon involved in killing Jerome Griffin. (TT III, 99-139, ECF No. 11-20, PageID.645-85; TT V, 94-109, ECF No. 11-22, PageID.1084-99; TT VI, 9-45, ECF No. 11-23, PageID. 1120-56; TT V, 94-109, ECF No. 11-22, PageID.1084-99; TT VI, 9-45, ECF No. 11-23, PageID.1120-56).

Charles Williams, Kuntie Robinson, and Leo Michael Ross each independently identified petitioner from lineups (TT IV, 53-56, 97-98, 133-35, ECF No. 11-21, PageID.806-09, 850-51, 886-88; TT V, 37, 76, ECF No. 11-22, PageID.1027, 1066) and again during petitioner's trial (TT IV, 25, 30-31, 53-56, 110-11, 133-35, 224, ECF No.

11-21, PageID.778, 783-84, 806-09, 863-64, 886-88, 977; TT V, 13-14, ECF No. 11-22, PageID.1003-04).

One of the items admitted into evidence against petitioner was a recording of petitioner's February 9, 2008, telephone conversation from jail with an unidentified female. The trial transcript indicates that playing the recording took one minute and it was comprised of this coded exchange between petitioner and the unidentified woman:

Petitioner: I'm trying to figure out who the f___ this n___ is. You know what I'm saying? I know Day-Day knows, because Day-Day was at the court.

Female Voice: Okay, okay.

Petitioner: And have him holler at the dog or something, you know what I'm saying? See what the ticket is on that shit, yeah.

Female Voice: So if they drop that case you be straight though, right?

Petitioner: Yeah, because I got the gun case, man. They was laughing at the police up there. Police lying like a mother_____.

(TT V, ECF No. 11-22, PageID.1083). Not only was there was no objection to the admission of this evidence, it was stipulated that the male voice on the recording was petitioner's voice and that the conversation had occurred on February 9, 2008. (TT V, 92-93, ECF No. 11-22, PageID.1082-83).

After the prosecution rested, defense counsel made a motion for a directed verdict. Judge Skutt found that the evidence presented was sufficient for a reasonable jury to find that each element of all the crimes charged had been proven beyond a

reasonable doubt and he denied the motion. (TT VI, 75-79, ECF No. 11-23, PageID.1186-90).

Petitioner elected to testify. (TT VI, 83-116, ECF No. 11-23, PageID.1194-1227). He denied having committed the crimes charged. (*Id.* at 89, 94-95, PageID.1200, 1205-06). He identified the other individual on the recorded conversation as "his son's mother, Latasha Smith." (*Id.* at 88, 100-01, PageID.1199, 1211-12). Petitioner offered an explanation of the message that he had been attempting to convey. (*Id.* at 88-89, PageID.1199-1200). There was no evidence indicating that petitioner could not have called Ms. Smith as a witness at trial if he had wished to take the risk that she might offer an interpretation of their conversation that would undermine his version.

On the morning of May 11, 2010, Judge Skutt delivered his final jury instructions. There were no objections. (TT VII, 5-26, ECF No. 11-24, PageID.1286-1307). Later that day, the jury returned its verdict finding petitioner guilty on all charges. (TT VII, 27-30, ECF No. 11-24, PageID.1308-12).

On May 27, 2010, the trial court sentenced petitioner as previously indicated. (ECF No. 11-25, PageID.1333-37; *see also* Judgment of Sentence Commitment to Department of Corrections, ECF No. 11-34, PageID.1591). Petitioner filed a motion for a new trial. Judge Skutt conducted a hearing on the motion. (ECF No. 11-28). On April 5, 2011, Judge Skutt entered his opinion and order denying petitioner's motion for a new trial. (ECF No. 11-34, PageID.1611-28).

## C.    Subsequent Proceedings

The issues now found in Grounds I-V of the habeas corpus petition were among those raised on direct appeal by petitioner's appellate counsel.  (ECF No.11-34, PageID.1635-36).  On December 11, 2012, the Michigan Court of Appeals rejected all petitioner's arguments and it affirmed his convictions.  (ECF No. 11-34 , PageID.1573-89).

Petitioner sought leave to appeal to Michigan's highest court.  (ECF No.11-35, PageID.1827-28).  On May 28, 2013, the Michigan Supreme Court denied leave to appeal because it was not persuaded that the questions presented should be reviewed by the court.  (ECF No. 11-35, PageID.1820).

On May 22, 2014, petitioner filed his habeas corpus petition.  (ECF No. 1).

## Discussion

## I.    Confrontation Clause

Ground I is petitioner's argument that the admission of the recording of his February 9, 2008, telephone conversation from jail with Ms. Smith violated his rights under the Confrontation Clause.  (Petition at 3, ECF No. 1, PageID.3; *see also* Petitioner's Brief at 14-20, ECF No. 11-34, PageID.1650-56).[2]

---

[2]To the extent petitioner is asserting a claim of evidentiary error under Michigan law, it does not provide a basis for federal habeas corpus relief.  The extraordinary remedy of habeas corpus lies only for a person held in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  An inquiry whether evidence was properly admitted under state law "is no part of the federal court's habeas review of a state conviction" because "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citations and quotations omitted).

The Michigan Court of Appeals held that there had been no error in the trial court's ruling allowing the recording of a February 9, 2008, conversation between petitioner and an unidentified woman into evidence, much less any error of constitutional magnitude. It found that the evidence was relevant. On February 5, 2008, Charles Williams had testified against petitioner at his preliminary examination hearing. It was a reasonable inference that petitioner's "very coded" telephone conversation a few days later was an attempt to secure the nonappearance of Charles Williams by offering to pay the fines that would be assessed if Williams did not appear to testify at trial. The attempt to influence or coerce a witness was admissible as evidence of petitioner's consciousness of guilt. The evidence did not pose a danger of undue prejudice or misleading the jury because "[b]oth the prosecution and defendant explained what they believed was the content of the conversation, and the jury was free to accept either version." (ECF No. 11-34, PageID.1575).

Even assuming that the recording should have been excluded, the error was harmless in light of the overwhelming evidence of petitioner's guilt:

> Overall, the record weighs overwhelmingly in favor of the verdict. Three witnesses testified that defendant entered the residence, armed with a handgun in each hand, and commanded the individuals to "Get down. You know what time it is." Before defendant could take any further action, the victim engaged defendant in a physical struggle. The victim was shot during the physical struggle with defendant. Almost two months later, the defendant was arrested for a separate crime during which time he was in possession of a .38 handgun. At trial, the handgun was identified as the weapon involved in the victim's shooting. Shortly after defendant's arrest, three witnesses separately identified defendant in a line-up at the police station.

(*Id.* at PageID.1576).

The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.' [The Supreme Court has] held that this bedrock procedural guarantee applies to both federal and state prosecutions."[3] *Crawford v. Washington*, 541 U.S. 36, 42 (2004). In *Crawford*, the Supreme Court divided out-of-court statements into two categories: those that are "testimonial" and those that are not. *Id.* at 50-69. The Court identified testimonial hearsay as the "primary" concern of the Confrontation Clause. *Id.* at 53. Testimonial out-of-court statements by a witness is barred under the Confrontation Clause, unless (1) the witness was unavailable, and (2) the defendant had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable. *Id.* at 68.

Petitioner presents no developed argument attempting to explain how allowing a recording of a telephone conversation in which he was a participant and testified at trial as to the meaning of what he said could violate his rights under the Confrontation Clause. Petitioner's recorded statements and the thirteen words spoken by Ms. Smith were not testimonial. *See Davis v. Washington*, 547 U.S. 813, 821 (2006).

Further, the purported error did not have a substantial and injurious effect or influence in determining the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Lilly v. Virginia*, 527 U.S. 116, 140 (1999); *Brown v. Curtin*, 661 F. App'x 398, 406-07 (6th Cir. 2016); *Payne v. Washington*, No. 1:11-cv-325, 2017 WL

---

[3]The Confrontation Clause applies to the States through the Fourteenth Amendment's Due Process Clause. *See Pointer v. Texas*, 380 U.S. 400, 403, 406 (1965).

780840, at * 20 (W.D. Mich. Mar. 1, 2017). The recording was extraordinarily brief. Ms. Smith spoke thirteen words and they were not important to the prosecution's case. It was only petitioner's words indicating his consciousness of guilt that had evidentiary significance. The claimed error was harmless in light of the overwhelming evidence of petitioner's guilt.

I find that Ground I does not provide a basis for federal habeas corpus relief. Petitioner has not shown that the state court decision rejecting Ground I "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## II. Jury Instructions

Grounds II, III, and IV are challenges to jury instructions. Ground II is petitioner's argument that the trial court's failure to give, *sua sponte*, an instruction on petitioner's alibi defense deprived him of a fair trial. (Petition at 4, ECF No. 1, PageID.4; *see also* Petitioner's Brief at 20-22, ECF No. 11-34, PageID.1656-58). Ground III is petitioner's argument that the verdict form deprived him of due process. (Petition at 5, ECF No. 1, PageID.5; *see also* Petitioner's Brief at 22-24, ECF No. 11-34, PageID.1658-60). Ground IV is petitioner's argument that a defective felony murder larceny instruction violated his due process rights. (Petition at 6, ECF No. 1, PageID.6; *see also* Petitioner's Brief at 24-28, ECF No. 11-34, PageID.1660-64).

There is no general federal right to a properly instructed jury. With few exceptions, the substance of jury instructions is a matter of state law. *See Estelle v. McGuire*, 502 U.S. 62, 70-72 (1991). Consequently, a federal court may grant habeas corpus relief based on errors in state jury instructions only in "extraordinary cases." *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007) (citing *Lewis v. Jeffers*, 497 U.S. 762, 780 (1990)). A habeas court may not grant relief on the basis of an allegedly erroneous instruction on evidence merely because it disagrees with the instruction. The only question in habeas corpus is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)); *accord Waddington v. Sarausad*, 555 U.S. 179, 191 (2009).

"It must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some constitutional right." *Estelle*, 502 U.S. at 72 (quotations and citation omitted). "[T]he instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Id.* (quoting *Cupp v. Naughten*, 414 U.S. at 147). The burden is even higher where, as here, the state court decision rejecting the petitioner's claims is entitled to AEDPA deference. *See* 28 U.S.C. § 2254(d)

The Michigan Court of Appeals found no constitutional violations stemming from the jury instructions. With regard to Ground II, the Court of Appeals found that the trial court judge did not commit error in failing to instruct the jury, *sua sponte*, on an alibi defense. (ECF No. 11-34, PageID.1577). "The instructions regarding

-15-

identification covered the substance of [petitioner's] alibi defense; that is, without testimony identifying [petitioner] as the individual who was present at the residence, the jury could not have found that [petitioner] was the perpetrator. Therefore, [petitioner's] rights to present a defense and a properly instructed jury were protected." (*Id.* at PageID.1578).

The Michigan Court of Appeals found no merit in Ground III, petitioner's argument that he was deprived of a fair trial because the verdict form failed to present the jury with an opportunity to return a general verdict of not guilty for the first-degree murder and lesser included offenses. (*Id.*). The verdict form "clearly provided the jury with an opportunity to return a general verdict of not guilty" and there was no violation of petitioner's constitutional rights. (*Id.* at Page ID. 1578-80).

The Court of Appeals held that petitioner's Ground IV claim that he had been deprived of his right to a properly instructed jury because the trial court gave a defective and confusing instruction on felony (larceny) murder was meritless. (*Id.* at PageID.1580). The instructions more than adequately covered the elements of attempted larceny. "The trial court properly instructed the jury on the elements of consent and intent while highlighting that the jury had to find an attempted larceny, not a completed larceny. Therefore, the jury was properly instructed on attempted larceny." The trial court did not "confuse[] the elements of attempted larceny" when it gave an instruction explaining that one of the elements of establishing felony murder was whether petitioner was committing or attempting to commit a felony (larceny),

when the act that caused the victim's death occurred. Petitioner was not deprived of his right to a properly instructed jury. (*Id.*).

I find that petitioner has failed to demonstrate any error in the decision of the Michigan Court of Appeals rejecting Grounds II, III, and IV. Accordingly, it cannot be said that the decision of the Michigan Court of Appeals rejecting each of these claims was "contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that it was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## III. Sufficiency of the Evidence

In Ground V, petitioner claims that the evidence presented at trial was insufficient to support the jury's verdict finding him guilty of felony murder. Specifically, he argues that the evidence was insufficient to establish that he committed the predicate crime of attempted larceny for the felony murder conviction. (Petition at 6, ECF No. 1, PageID.6; *see also* Petitioner's Brief at 28-31, ECF No. 14, PageID.1664-67).

A section 2254 challenge to the sufficiency of evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and

to draw reasonable inferences from basic facts to ultimate facts.  *Id.*; *see Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*) (*Jackson v. Virginia* "makes clear that it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial.").  Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n. 16; *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011).

The Michigan Court of Appeals ruled directly on this claim.  (ECF No. 11-34, PageID.1580-81).  Review of this issue must be conducted under the AEDPA standard, which the Sixth Circuit has described as "very deferential."  *Durr v. Mitchell*, 487 F.3d 423, 448 (6th Cir. 2007).  Review of challenges to the sufficiency of evidence under the *Jackson v. Virginia* standard proceeds under the "unreasonable application" prong of AEDPA.  *See Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir. 2008).  Such an argument is properly understood as an allegation that the state court's decision resulted in an unreasonable application of *Jackson v. Virginia*.  *See Eady v. Morgan*, 515 F.3d 587, 601-02 (6th Cir. 2008).  Review in such cases "is limited to determining whether the evidence was so overwhelmingly in favor of the petitioner that it compelled a verdict in his or her favor."  *Thompson v. Bock*, 215 F. App'x 431, 436 (6th Cir. 2007).  This standard presents a "nearly insurmountable hurdle" for the habeas petitioner.  *Davis*

*v. Lafler*, 658 F.3d at 534. "Adding to this extremely high bar are the stringent and limiting standards of AEDPA." *Id.*

The Sixth Circuit has summarized the "double layer of deference" given the state-court decisions in the context of sufficiency-of-the-evidence claims:

> First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not re-weigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable.

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

The Michigan Court of Appeals examined the elements the prosecution must prove to establish felony murder. It specifically noted that attempted larceny is a predicate felony under Michigan's felony murder statute and that the intent to commit a larceny can be inferred from a defendant's acts. The Court of Appeals held that there was sufficient evidence for a reasonable jury to find that petitioner committed an attempted larceny:

> At trial, three witnesses testified that defendant entered the residence while holding a handgun in each hand. Defendant was neither a resident nor an invitee. Upon entering the residence, defendant said, "You know what time it is. Get down." At trial, the witnesses characterized the

events as an attempted robbery. The victim interrupted defendant and either grabbed or punched defendant. A tussle ensued and the victim was subsequently shot. Meanwhile, the three witnesses ran out of the residence. While defendant argues there was nothing to suggest that he intended to commit an act of larceny, a jury could reasonably infer that defendant's unlawful entrance into the residence and command to "get down" or "lay on the floor," "you know what time it is," while holding two guns indicated that he intended to commit a larceny inside of the residence, and all reasonable inferences are drawn in support of the verdict. Accordingly, in viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence for a reasonable jury to conclude that defendant committed an attempted larceny.

(ECF No. 11-34, PageID.1581) (citation omitted).

Habeas corpus review does not involve re-weighing the evidence, re-evaluating the credibility of witnesses, or substituting this Court's judgment for that of the jury. *See Johnson v. Mitchell*, 585 F.3d 923 (6th Cir. 2009). Here, the Michigan Court of Appeals articulated the appropriate standard under *Jackson v. Virginia*, citing state cases adopting this standard. The decision of the Michigan Court of Appeals finding that there was sufficient evidence to support the jury's verdict was not an unreasonable application of the *Jackson v. Virginia* standard. 28 U.S.C. § 2254(d)(1).

## IV.    Abandoned Grounds VI and VII

As noted at the beginning of this report and recommendation, Grounds VI and VII are unexhausted and petitioner did not comply with the Court's July 17, 2014, Order. (ECF No. 6). Thus, unexhausted Grounds VI and VII should be deemed abandoned because petitioner did not make a timely attempt to meet the requirements for a stay and he failed to comply with the Court's order.

## V.     Certificate of Appealability

Should the Court deny the petition, it must determine whether a certificate of appealability should be granted. 28 U.S.C. § 2253(c)(2). A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 529 U.S. at 484. "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of petitioner's claims. *Id.*

Examining petitioner's claims under the standard in *Slack*, reasonable jurists would not conclude this Court's assessment of petitioner's claims to be debatable or wrong. Accordingly, I recommend that the Court deny petitioner a certificate of appealability.

## Recommended Disposition

For the foregoing reasons, I recommend that the petition be denied, and that petitioner be denied a certificate of appealability.

Dated: May 24, 2017          /s/ Phillip J. Green
                                   United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).